OPINION OF THE COURT
Ira B. Harkavy, J.
Not even caveat emptor requires the acceptance of a “pig in a poke” especially when life may be at stake (for — if you buy this I have a bridge over the East River for sale).
The parties hereto met at a scuba convention in New Orleans in January, 1980 at which manufacturers and suppliers of scuba equipment and air compressors exhibited their merchandise for prospective purchasers. At that convention, A. L. James, vice-president of the plaintiff corporation (hereinafter referred to as plaintiff), had a conversation with Louis Schroeder, president of the defendant corporation (hereinafter referred to as defendant), during which plaintiff stated to defendant that he had a “joy” compressor for sale which could be used to put breathable air into scuba tanks. The parties’ versions of the conversation differ.
Plaintiff suggests that defendant solicited a contract for sale, although both plaintiff’s testimony and memorandum of law are vague as to how such solicitation took place. It is *157 plaintiff’s position that defendant discovered (from an unmentioned source) that plaintiff had a compressor and tank system for sale, that the system was currently in use in a dive shop in Tulsa, Oklahoma, that the unit was to be sold in “as is” condition, and that the sale price was $4,279.
Defendant testified that plaintiff told him that he had a compressor and tank system for sale and suggested that he ship the compressor to defendant’s shop on a try-out basis. Defendant did not commit himself, and no terms of payment were agreed to. Plaintiff made certain representations about the capacity, amount and use of the machinery. Subsequent to the convention, plaintiff telephoned defendant on numerous occasions in an attempt to persuade defendant to allow the compressor to be shipped to the defendant’s premises on a try-out basis and that defendant should pay the cost of the shipping. Defendant agreed to these conditions and the compressor was delivered to defendant by a freight company on April 23,1980. Defendant paid freight charges in the amount of $253. Defendant further testified that the freight company left the compressor sealed within the box on the street in front of the defendant’s shop and that the compressor was not and could not be inspected until after the departure of the deliverymen. An examination of the compressor revealed that plaintiff had misrepresented the condition of the machine, its square inch capacity, and the nature of its filtering system. A label on the compressor indicated that it had previously been used to start up jet aircraft, which would render it unusable for subsequent human use. Defendant alleges that he immediately telephoned plaintiff and advised him that the compressor was totally unacceptable and that plaintiff should arrange to pick up the compressor and reimburse defendant for the $253 expended for freight charges. According to defendant, numerous telephone calls were made but plaintiff persistently refused to pick up the compressor.
Plaintiff disputes that defendant made timely rejection. Plaintiff testified that in July of 1980 he visited defendant’s place of business for the purpose of finding out why the buyer had not paid for the goods. At that time plaintiff offered to take back the goods with him by his own trucker. *158 He claims defendant’s response was to have plaintiff thrown out of the store.
Section 2-326 of the Uniform Commercial Code codifies the rights and obligations of the parties where a transaction is found to be a sale on approval. The statute is silent, however, as to what factors will distinguish a contract for sale from a sale on approval, when the nature of the transaction is in dispute. Section 2-326 states: “(1) [ujnless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is (a) a ‘sale on approval’ if the goods are delivered primarily for use”. Comment 1 to section 2-326 states: “The type of ‘sale on approval,’ ‘on trial’ or ‘on satisfaction’ dealt with involves a contract under which the seller undertakes a particular business risk to satisfy his prospective buyer with the appearance or performance of the goods in question. The goods are delivered to the proposed purchaser but they remain the property of the seller until the buyer accepts them. The price has already been agreed. The buyer’s willingness to receive and test the goods is the consideration for the seller’s engagement to deliver and sell * * * The present section is not concerned with remedies for breach of contract.” Section 2-327 of the Uniform Commercial Code is entitled “Special Incidents of Sale on Approval and Sale or Return”. This section, inter alia, states in paragraph (b) of subdivision (1), “failure seasonably to notify the seller of election to return the goods is acceptance” and in paragraph (c) of subdivision (1), “after due notification of election to return, the return is at the seller’s risk and expense”.
As can be seen, the code is not explicit on the rules governing sales on approval, but is more interested in the rights and liabilities of the parties once a sale on approval is found. One wonders whether the code drafters intentionally omitted the criteria for establishing sales on approval in deference to common-law principles. Nonetheless, it is the common-law principles which must be invoked in the instant case.
It is a familiar concept of contract law that the intent of the parties governs the agreement. In order for there to be an agreement, there must be a mutual manifestation of *159 assent to the terms of the agreement. Since this assent cannot be determined subjectively (the court in all its wisdom is not a mind reader) it must be proved objectively.
The court must first examine the testimony. It is undisputed that at the DEMA convention, where the parties first discussed the sale, most of the major manufacturers of compressors for use in the scuba industry had their merchandise on display. Plaintiff testified that he was in the business of selling scuba equipment and not air compressors. Plaintiff further testified that he had never seen nor examined the compressor which was delivered to the defendant in that it was possessed by a man in Arkansas who owed money to the plaintiff. It seems highly unlikely that the defendant would agree to purchase a compressor from the plaintiff sight unseen, when the plaintiff was not in the business of selling or distributing compressors and when most major manufacturers of compressors for use in the scuba industry had their equipment and merchandise on display at said convention.
Plaintiff introduced two invoices into evidence claiming that these amounted to a contract for sale. These documents in no way whatsoever reflect the intent of the parties in that they are unilateral, totally prepared by the plaintiff and in no way agreed to by the defendant.
At the trial of this action, Steven Bielenda, a compressor repairman, was qualified as an expert witness on behalf of the defendant. His uncontradicted testimony was that the compressor delivered by the plaintiff to the defendant was not operational, could not be used nor adapted to place breathable air into scuba tanks in that there was no way to remove sufficient oil particles from the produced air. He testified that to utilize this compressor to produce breathable air might kill or seriously injure someone. An attempt to use the afore-mentioned compressor to put air into scuba tanks would violate article 27 of the New York City Health Code, which governs the sale of scuba equipment.
Even if the afore-mentioned transaction was found to be a contract for sale, the court finds the defendant complied with Uniform Commercial Code provisions for making timely rejection. Section 2-601 of the Uniform Commercial Code provides “if the goods or the tender of delivery fail in *160 any respect to conform to the contract, the buyer may (a) reject the whole; or (b) accept the whole; or (c) accept any commercial unit or units and reject the rest.”
Subdivision (1) of section 2-602 of the Uniform Commercial Code provides that the rejection of the goods must be made within a reasonable time after their delivery. The court finds that said examination occurred on the date of delivery and thus constitutes timely examination. Section 2-513 of the Uniform Commercial Code provides that the inspection may take place after arrival of the merchandise when the seller is required or authorized to send the goods to the buyer. Subdivision (2) of section 2-513 provides, “[e]xpenses of inspection must be borne by the buyer but may be recovered from the seller if the goods do not conform and are rejected.” Therefore, the defendant is entitled to reimbursement of the sum of $253 expended for the freight charges in this matter in that the goods did not conform to the agreement and were timely rejected by the defendant, as will be hereinafter set forth. In addition, comment 4 to section 2-513 provides “Where the buyer would normally bear the expenses of the inspection but the goods are rightly rejected because of what the inspection reveals, demonstrable and reasonable costs of the inspection are part of his incidental damage caused by the seller’s breach.”
Accordingly, judgment for defendant dismissing plaintiff’s complaint and judgment for defendant on counterclaim in the sum of $253 plus interest from April 23,1980.